ESTATE OF C. W. CREWS, KATE DOWNING CREWS, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 981. Promulgated September 27, 1927.

1. Where a contract for the sale of a farm, executed by both the owners of the fee and the owner of a life estate therein, provided that the life owner should receive all interest and benefit from the principal purchase price during his life, and the fee owners were entitled to none of the proceeds nor the use thereof during his life, the initial payment under the contract made to the common agent of both grantors was a payment to, and a receipt thereof by, the owner of the life estate.

2. And where such contract further provided that the owner of the life estate should be reimbursed, out of the first payments of the principal purchase price, for improvements to the farm made by him, the initial payment, which was less than the cost of such improvements, was a partial return of capital and not taxable income.

*Turner S. Underwood*, *C. P. A.*, for the petitioner.
*W. H. Lawder*, *Esq.*, for the respondent.

In this case a redetermination is asked of a deficiency in income tax for the year 1920 found by the Commissioner to amount to $640.14. It is alleged that the Commissioner erred by including in taxable income the sums of $3,000, as rent, and $30, as dividends, and by disallowing an alleged loss on the sale of two tracts of land, all of which is denied by the Commissioner. It is further alleged that the Commissioner asserted a deficiency in tax for 1919, whereas in fact there is an overassessment for that year. The Commissioner denied that a deficiency had been determined or asserted for 1919 and no evidence was submitted in support of this assignment of error. At the hearing petitioner abandoned the assignment of error as to the $30 item, and introduced no evidence in support of the alleged loss on the sale of two tracts of land.

### FINDINGS OF FACT.

The petitioner is an individual, residing at Pueblo, Colo., and is administratrix of the estate of C. W. Crews, deceased.

C. W. Crews, for many years prior to the taxable year, was a merchant in Pueblo, Colo., and prior to 1904 owned a farm, near Pueblo, with certain water rights appurtenant thereto. In or about 1904 Crews conveyed the farm and water rights to his two daughters, Lucille Crews Marsh and Clara Crews Wells, both of whom resided in California, reserving to himself a life estate therein. In the year 1918 Crews installed upon the farm a tile drainage system at a cost of $4,919.80. Thereafter, but prior to 1920, to facilitate a sale of the farm, Crews informally agreed with his daughters that he would release his life estate, with the understanding that out of the first payments received from the sale he would be reimbursed for the cost of said drainage system.

Early in the year 1918 Crews suffered a stroke of paralysis and from that time until his death in 1923 his wife, Kate Downing Crews, conducted all his business affairs. In the fall of 1919 negotiations for the sale of the farm were entered into between C. W. Mills and Mrs. Crews, representing Crews and the two daughters. On September 12, 1919, a contract for the sale of the farm was entered into

between Lucille Crews Marsh and Clara Crews Wells, parties of the first part, C. W. Mills, party of the second part, and C. W. Crews, party of the third part. By the terms of the agreement the farm, together with the water rights, was sold, free of incumbrances, to Mills for $24,000, of which $3,000 was payable on or before January 1, 1920, and the balance payable in annual installments of varying amounts, the last installment being due January 1, 1932. Among other things, the agreement provided:

WHEREAS, the first parties are the owners of—

The North Half of the South-west Quarter of Section Twenty-three, Township Twenty-two South of Range Fifty-nine West of the Sixth P. M. Otero County, Colorado, containing eighty acres,

subject to a life estate of the third party, and likewise own twenty-six (26) shares of the capital stock of the Oxford Farmers' Ditch Company, represented by Certificate No. 290, duly issued February 9th, 1900, to the said C. W. Crews, and said first parties desire to sell and dispose of the real estate above described, and sixteen (16) shares of water stock above referred to, to the second party for the sum of Twenty-four Thousand Dollars ($24,000) free and clear from all liens and incumbrances, and

WHEREAS, the second party is desirous of purchasing the land above described together with sixteen (16) shares of said water stock, and offers to pay therefor the sum of Twenty-four Thousand Dollars ($24,000) on the terms and conditions hereinafter set forth,

Now, IT IS MUTUALLY AGREED between the parties hereto that the first parties will and they do hereby sell to the second party the land above described, together with sixteen (16) shares of the capital stock of The Oxford Farmers' Ditch Company, above referred to, for the aggregate sum of Twenty-four Thousand Dollars ($24,000), to be paid as follows:

Two Hundred and Fifty Dollars ($250.00) Cash when this contract is signed, receipt whereof is hereby acknowledged, and Twenty-seven Hundred and Fifty Dollars ($2,750) in cash on January 1st, 1920, the balance of Twenty-one Thousand Dollars ($21,000) to be paid in annual installments as follows:

   *     *     *     *     *     *     *

all of said deferred payments to be represented by promissory notes, payable to said first parties, of even date with this contract, all drawing interest at six per cent (6%) per annum, on and after January 1st, 1920, payable annually on the first day of January each and every year thereafter until the principal and interest on all of said notes have been fully satisfied and paid, all of said promissory notes to be payable on or before maturity.

   *     *     *     *     *     *     *

IT IS FURTHER MUTUALLY AGREED between the parties hereto that the first parties will join in a good and sufficient Warranty Deed of Conveyance along with the third party, as grantors to said second party, when this contract is signed, which said deed shall be duly signed and acknowledged by said grantors, and said Warranty Deed along with this Contract, said promissory notes, Abstract of Title, Fire Insurance policies, together with a Certificate of Stock in The Oxford Farmers' Ditch Company for sixteen (16) shares of the capital stock of said Company, duly issued in the name of C. W. Crews, and properly endorsed, shall be placed in escrow in the First National Bank of Pueblo, Colorado, to be there held by said Bank, pursuant to the terms, covenants and conditions of this contract.

IT IS FURTHER MUTUALLY AGREED between the parties hereto that out of the first moneys paid on said purchase price of Twenty-four Thousand Dollars ($24,000), the said third party, in consideration of the releasing of his life estate in said land and water as hereinafter provided, shall receive all interest accruing on said purchase price during his life time, whether the same shall arise from deferred payments or from a reinvestment of payments after they have been made, and in addition thereto will be entitled to receive in consideration of the improvements heretofore made by the said third party on the land above described, the first Ten Thousand Dollars ($10,000) of the principal sum of said purchase price as the same is paid, to be his absolutely.

IT IS MUTUALLY AGREED between the parties hereto that after the said third party has received Ten Thousand Dollars ($10,000) as above provided, the remainder of the principal of said purchase price shall be invested in interest-bearing securities subject to the approval of the first and third parties, and said third party shall receive all interest arising therefrom during his life time.

*        *        *        *        *        *        *

IT IS FURTHER MUTUALLY AGREED between the parties hereto that in the event of the death of said third party, said bank shall pay all of the proceeds thereafter arising from the sale of said land and water above described, including principal and interest to said first parties, except the payment of $6,000.00 of the $10,000.00 to be paid to the third party, or his estate, as hereinbefore provided, said $10,000.00 payment being reduced to $6,000.00 by the terms of another contract between the first and third parties hereto and John Garner, which obligates the South Half of the South-west Quarter of said Section Twenty-three for $4,000.00 of said payment of $10,000.00.

IT IS FURTHER MUTUALLY AGREED between the parties hereto that at any time during the life of this agreement, said second party pays off and fully satisfies all of said promissory notes, representing the unpaid balance of said purchase price of the land and water hereinabove described and set forth, then and in that event said Bank is hereby authorized and fully empowered to deliver all of said escrow papers above enumerated and held by said Bank to said second party, for his sole use and benefit, and shall receive said purchase price for the use and benefit of the parties entitled thereto, pursuant to the terms of this agreement.

*        *        *        *        *        *        *

IT IS FURTHER MUTUALLY AGREED that in the event the second party defaults in the performance of any of the terms, covenants and conditions of this contract, he shall immediately surrender and deliver up possession of said premises to said first and third parties, peaceably, and if on being notified thirty days in writing by said first and third parties, he shall fail and refuse to surrender and deliver up possession of said premises, together with all of the improvements thereon, then and in that event, said first and third parties or either of them shall have full right and power to eject, dispossess and put off the said second party from said premises, and the said Bank shall within ten days after the expiration of said thirty days surrender and deliver up to said first and third parties any and all papers, securities, conveyances or evidences of indebtedness held by it in escrow as aforesaid, and any payments made pursuant to the terms hereof prior thereto, shall be considered as rent for the use of said premises for the lapsed period, and shall become the property of the first and third parties, respectively, as herein provided, to be theirs absolutely, as a penalty for the failure of said second party to comply with the terms of this agreement; * * *.

The first payment of $3,000 was made to Mrs. Crews, representing Crews and the daughters, in January, 1920, and no further payment upon the principal purchase price or interest thereon was made at any time. Mills was in possession of the property during the years 1920, 1921, and 1922. Thereafter, Mills, being unable to make the agreed payments because of farming conditions, surrendered the property and the contract was canceled. The initial payment of $3,000 was forfeited in 1923 and retained pursuant to the terms of the contract.

The $3,000 initial payment was made to Mrs. Crews and by her paid over to the two daughters. Neither Crews nor his estate was otherwise reimbursed for the cost of the drainage system installed.

OPINION.

VAN FOSSAN: The only matter requiring our consideration is whether or not the $3,000 initial payment made under the Mills contract was taxable income received by the decedent, Crews, in the year 1920. All other issues raised by the pleadings were abandoned by the petitioner.

The contract of sale is a tripartite agreement under which Crews and his daughters engaged to convey their independent interests in the farm to Mills for the consideration therein specified. Crews was the owner of a life estate in the farm and the daughters were the owners of the fee, and in the agreement of sale the parties evidenced their intention to preserve their respective interests in the proceeds to be derived from the sale. Crews, after receiving a stipulated sum of $10,000 as reimbursement for improvements made to the property, was to receive all interest and profits from the balance of the proceeds during his lifetime. It is clear from a consideration of this agreement as a whole that the daughters would receive no benefit from or any part of the proceeds of the sale until after the death of Crews. When, therefore, Mills paid the $3,000 to Mrs. Crews she received money belonging to Crews, and that sum was in law received by him at the time it was paid to her. (See *Appeal of Julia A. Strauss*, 2 B. T. A. 598.) It is immaterial that Mrs. Crews also acted as the agent of the daughters. Since they had no interest in or title to the $3,000 payment and were to receive no benefit from any of the proceeds of sale so long as Crews lived and the agreement remained unmodified, it can not be said that Mrs. Crews received the $3,000 as agent for the daughters. The fact that Mrs. Crews subsequently paid the money to the daughters instead of to Crews does not alter the fact that it had been received by Crews. The circumstances surrounding the transfer of this sum to the daughters showed it to be nothing more

than an advancement or loan from Crews. It was not paid to them in recognition of any right or title thereto.

Although Crews received the $3,000 it does not follow that it was taxable income to him. Respondent calls attention to the forfeiture clause of the contract under which this sum was designated as rent upon default by the purchaser, and urges that as rent it was income to Crews under the contract. That clause, however, is not determinative of the question before us, nor do we conceive it to be material. Whatever may have been the intention or purpose of the parties in stipulating that payments forfeited upon default should be considered rent, whether or not the payment was in fact income at the time made must be determined from all the facts and circumstances existing at that time. Default and forfeiture under the contract were not availed of until 1923 and can not affect the nature of a payment made in 1920. We must determine whether or not the $3,000 was in fact taxable income in 1920. The name by which the parties may provide that such payment shall be called upon the happening of a future event, which may or may not happen, is immaterial.

The contract clearly expresses the intention that Crews should be reimbursed to the extent of $10,000, out of the first payments made upon the principal purchase price, for improvements to the property made by him. The only payment of any nature made under the contract was the $3,000 initial payment upon principal, which was considerably less than the amount specified in the contract as reimbursement to Crews for improvements and was even insufficient to reimburse him for the drainage system, the installation and cost of which is not disputed.

Upon the whole record we think it evident that the $3,000 received by Crews in 1920 was not taxable income, but was a partial reimbursement of his capital investment. It was, therefore, not taxable. *Appeal of Mandel Brothers*, 4 B. T. A. 341, 351.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.